**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-1109-WJM

GURJANT SINGH,

      Petitioner,

v.

GEORGE VALDEZ, in his official capacity as Field Office Director, Denver
Field Office, Immigration and Customs Enforcement, *et al.*

      Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Gurjant Singh's Petition for Writ of Habeas Corpus,

brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1), and Motion for

Temporary Restraining Order and Preliminary Injunction ("Motion") (ECF No. 2).

Respondents George Valdez,[1] in his official capacity as Field Office Director of the

Denver Field Office for U.S. Immigration & Customs Enforcement ("ICE"); Todd Lyons,

in his official capacity as Acting Director of ICE; Markwayne Mullin, in his official

capacity as Secretary of the United States Department of Homeland Security ("DHS");[2]

and Pamela Bondi, in her official capacity as Attorney General of the United States

Department of Justice (collectively, "Respondents" or "the Government"), filed a

response. (ECF No. 10.)

---

[1] The Petition originally named Robert Hagan, for whom the Government substituted Valdez pursuant to Fed. R. Civ. P. 25(d).

[2] The Petition originally named Defendant "Doe," for whom the Government substituted Mullin pursuant to Fed. R. Civ. P. 25(d).

For the following reasons, the Petition is granted and the Motion is denied as moot.

## I.    BACKGROUND

This case involves an all too familiar fact pattern.  Singh is an asylum seeker from India who first entered the United States in November 2023.  (ECF No. 1 at ¶¶ 4, 56–57.)  He was apprehended by Custom and Border Protection ("CBP") on that same date but subsequently released on conditional parole pursuant to 8 U.S.C. § 1226(a)(2)(B).  (*Id.* at ¶¶ 5, 59–60.)

Over two years later, on February 28, 2026, Singh was rearrested without a warrant or a pre-deprivation hearing.  (*Id.* at ¶¶ 5, 68.)  At the time of this arrest, he was driving a truck and experienced a flat tire, and he was thus en route to a tire shop when he was stopped by highway patrol.  (*Id.* at ¶ 69.)  Officers asked Singh if he was a U.S. citizen during the stop, and he informed them he was not.  (*Id.*)  The officers placed him under arrest and transferred him to the custody of ICE.  (*Id.*)

Singh submits—and the Government does not refute—that there has been no material change in circumstances, he has no criminal record, and he has not violated any conditions of release from initial custody.  (*Id.* at ¶¶ 5, 70, 73.)  But the Government now insists Singh is subject to mandatory detention under 8 U.S.C. § 1225(b).  (*Id.* at ¶ 6; ECF No. 10 at 1.)

Singh challenges the legality of his detention and asks the Court to order his immediate release from custody.  (ECF No. 1 at ¶ 1.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through

2

habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws...of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

Singh contends that his purported mandatory detention under § 1225(b) violates the Immigration and Nationality Act ("INA") and his Fifth Amendment Due Process rights.  (*See generally* ECF No. 1.)  He further asserts that a bond hearing before an Immigration Judge ("IJ") is an inadequate remedy and thus exclusively seeks immediate release.  (*Id.* at ¶¶ 75–84.)  The Court agrees on all counts.

### A.    Sections 1225(b) and 1226(a)

The Government submits that "[t]he central legal issue presented in this case concerns whether a noncitizen who is present in the United States and has not been admitted is subject to mandatory detention by U.S. Immigration and Customs Enforcement ("ICE") under 8 U.S.C. § 1225(b)(2), or whether such a noncitizen is entitled by § 1226(a) to seek a bond hearing."  (ECF No. 10 at 1.)  The Government further submits that the particular facts of this case are not germane to this central legal issue.  (*Id.*)  On the contrary, the Government acknowledges: "This issue is not

materially different from an issue this Court has resolved in a prior ruling in another case." (*Id.* (citing *Morales Lopez v. Baltazar*, 2026 WL 25161, at *1 (D. Colo. Jan. 5, 2026).)

In *Morales Lopez*, the Court made the following very clear: "Like dozens of other federal district courts across the country, including in this Circuit, the Court concludes that Morales Lopez's detention is properly governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A)." *Id.* at *4 (citing *Nava Hernandez v. Baltazar, et al.*, 2025 WL 2996643, at *4 (D. Colo. Oct. 24, 2025)).) The Court more fulsomely fleshed out the reasoning behind this ruling only a week or so later, in *Garcia Abanil v. Baltazar*, — F.Supp.3d —, 2026 WL 100587, at *4 (D. Colo. Jan. 14, 2026).

The Court summarized the operative legal question as follows:

> [S]ince *Yajure Hurtado*, many lawsuits have been filed challenging Respondents' recent practice of subjecting all noncitizen immigrants present in the United States to mandatory detention pursuant to § 1225(b)(2)(A). As in many of those previously filed actions, Garcia Abanil alleges here that his continued detention under 1225(b)(2)(A) violates the INA . . . . (ECF No. 1.) . . . . Ultimately, [the Court] joins the many federal courts across the country that have been faced with virtually identical challenges in concluding that Garcia Abanil is subject to detention only under § 1226(a)—not § 1225(b)(2)(A) . . . .

2026 WL 100587, at *4. Ultimately, "like numerous other courts presented with this very same question of statutory interpretation," the Court agreed with Garcia Abanil. *Id.* at *4. It reasoned:

> 'The weight of authority interpreting § 1225 has recognized that 'for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.' *Loa Caballero*

4

> *v. Baltazar,* 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (quoting *Martinez v. Hyde,* 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (internal citations omitted)).
>
> . . .
>
> At bottom, '[n]oncitizens who are just 'present' in the country . . ., who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission.'  *Lopez-Campos*, 797 F. Supp. 3d at 781.  And "[a]s § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [persons who have] already been residing in the United States for several years.'  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).  Put another way, noncitizens in Garcia Abanil's position, who entered the United States many years ago, are not 'seeking admission' to the United States but are instead "seeking to remain in the United States.'  *Lepe v. Andrews*, — F. Supp. 3d —, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *see also J.G.O. v. Francis*, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025) ('[S]eeking admission' requires an alien to continue to want to go into the country.  The problem, as [petitioner] points out, is that he's already here; you can't go into a place where you already are.' (emphasis in original)).

*Id.* at *4–5.

The Court did not, however, base its conclusion on the plain text of the

controlling statutes alone.  Rather, it went on to observe that

> Respondents' proffered interpretation of § 1225 appears facially inconsistent with related implementing regulations.  Though, "[w]ith *Chevron* laid to rest," the Court must "follow the Supreme Court's charge to 'exercise independent judgment' in interpreting the relevant statutory language," *Rangel-Fuentes v. Bondi*, 155 F.4th 1138, 1143 (10th Cir. 2025) (internal citation omitted), courts may nonetheless 'seek aid from the interpretations of those responsible for implementing particular statutes,' *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).  "[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning."  *Id.*

> As relevant here, the implementing regulation for § 1225(b) states that 'any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act.'  8 C.F.R. § 235(c)(1) (emphasis added).  In this way, "[t]he regulation appears to contemplate that applicants seeking admission are a subset of applicants 'roughly interchangeable' with 'arriving aliens.'  *Cordero Pelico v. Kaiser*, 2025 WL 2822876, at *11 (Oct. 3, 2025) (quoting *Martinez*, 2025 WL 2084238, at *6) (emphasis in original).  An 'arriving alien' is defined under the regulatory scheme as 'an applicant for admission coming or attempting to come into the United States at a port-of-entry.'  8 C.F.R. § 1.2.  'This plainly does not describe petitioners,' like Garcia Abanil, who already 'reside in the United States.'  *Kaiser*, 2025 WL 28227876, at *11.

*Id.*

The Government "respectfully disagree[s] with th[ese] ruling[s]" and points to the recent decisions of the Fifth and Eighth Circuits adopting its proffered interpretation of § 1225(b).  (ECF No. 10 at 2 (citing *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 502–08 (5th Cir. 2026); *Avila v. Bondi,* --- F.4th ---, 2026 WL 819258, at *2–6 (8th Cir. Mar. 25, 2026)).)  Nevertheless, "Respondents acknowledge that until the Tenth Circuit rules on this issue, this Court's prior ruling on this issue would lead the Court to reach the same result here if the Court adheres to that decision, as the facts of this case are not materially distinguishable from that case for purposes of the Court's decision on the legal issue of whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)."  (ECF No. 10 at 3.)  As a result, "while Respondents do not consent to issuance of the writ and reserve the right to appeal, in order to conserve judicial and party resources," they submit that they have nothing to add beyond the arguments the undersigned has already fully considered and rejected elsewhere.  (*Id.* at 2.)

As the Government predicted, the Court sees no basis to depart from the extensive reasoning outlined in its published decision in *Garcia Abanil*.  Courts in this Circuit have applied the same rationale in cases factually identical to this one, where Singh was paroled into the United States on his own recognizance in November 2023, and lived in the United States since that date before he was re-detained.  *E.g., Singh v. Noem et al.,*--- F. Supp. 3d, 2026 WL 766228, at *2–5 (D.N.M. Mar. 18, 2026); *Paposhvili v. Noem,* 2026 WL 700054, at *2 (D.N.M. Mar. 12, 2026); *Makhmudov v. Bondi et al.,* 2026 WL 865745 (W.D. Okla. Mar. 11, 2026); *Velasquez Montillo v. Brooksby,* 2026 WL 592355, at *5 (D. Utah Mar. 3, 2026).

Thus, the Court concludes that § 1225(b) does not apply to Singh.

**B.      Fifth Amendment Violation**

In *Garcia Abanil,* the Court also proceeded to consider Garcia Abanil's assertion that his illegal detention violated his due process rights.  2026 WL 100587, at *6 ("Here, the parties' arguments appear, at least implicitly, to acknowledge that Garcia Abanil's due process claim rises and falls with the Court's determination of whether he is detained pursuant to § 1225(b)(2)(A) or § 1226(a).").  It reasoned that, "[b]ecause Garcia Abanil is statutorily entitled under § 1226 to more process than he has thus far received, his continued detention without an individualized bond hearing necessarily violates his Fifth Amendment right to due process."  *Id.*; *cf. Lopez Benitez*, 795 F. Supp. 3d at 495 (concluding, at least as it pertains to the first factor set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that "the facts clearly demonstrate[d] that [petitioner] was 'entitled to more process than he received' pursuant to § 1226(a) and its implementing regulations" and thus "a violation of [petitioner's] 'liberty interest is clearly established' here").

7

Here, however, the precise nature of the alleged Due Process violation is slightly different.  Given Singh was *already* on conditional parole under § 1226(a) at the time of his arrest in February 2026, he asserts the Government's violation of his procedural Due Process rights flows from his re-detention without notice, a pre-deprivation hearing, or any material change in circumstances.  (ECF No. 1 at ¶¶ 95–99.)

The Government does not develop a fulsome argument in response to Singh's Fifth Amendment claim and instead encourages the Court to rest its decision on the statutory interpretation question.  (*See* ECF No. 10 at 4.)  But many courts have considered procedural due process claims identical to the one Singh asserts in the Petition.  Ultimately, they have concurred with the petitioner.  *E.g., Singh*, 2026 WL 766228, at *5–10 (concluding, after consideration of the *Mathews* factors, that conditionally paroled petitioner's failure to receive a pre-deprivation hearing prior to being re-detained violated his procedural due process rights); *Makhmudov,* 2026 WL 865745, at *12 (finding petitioner had shown a likelihood of success on the merits of his procedural due process claim that he was entitled to a pre-deprivation hearing before being re-detained); *Diallo v. Orozco,* 2026 WL 608746, at *2 (D.N.M. Mar. 4, 2026) ("due process requires Diallo receive a hearing before an IJ prior to re-detention").

The Court adopts their sound reasoning and analysis and likewise holds that Singh's re-detention without a pre-deprivation hearing violated his procedural Due Process rights.[3]

---

[3] The Court does not reach Singh's substantive due process claim.  (ECF No. 1 at ¶¶ 90–94.)

**C.    Remedy**

The Government submits that, if the Court agrees with Singh and determines he is detained under § 1226(a), "the appropriate relief is for the Court to direct a bond hearing be conducted pursuant to § 1226(a) before an immigration judge."  (ECF No. 10 at 3.)  The Court disagrees.

As recently put by one district judge in this Circuit,

> [a] bond hearing, which Petitioner is entitled to regardless, cannot cure the fact that he is detained while his conditional parole is still ongoing because it has not been properly terminated.  Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated.  The Court does not see how ordering another bond hearing would remedy a wrong that has been ongoing since the outset of Petitioner's re-detention.

*Singh,* 2026 WL 766228, at *10.  This is view is shared by many other courts across the country, including numerous courts in this Circuit.  *See Murzi v. Noem,* 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole); *Velasquez Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby, et al.,* 2026 WL 622751, at *13 (same as to petitioner ordered released on her own recognizance in September 2023).

Moreover, Singh argues that a bond hearing before an IJ is an inadequate remedy because it is unlikely to be a fair one.  (ECF No. 1 at 14–15.)  He asserts a long list of reasons why a bond hearing is unlikely to be a fair proceeding.  (*Id.* at ¶¶ 76–84.)  The Court shares many of these same concerns, not the least of which is his averment

9

that IJs "often cite little or no reasoning in determining that noncitizens are a flight-risk."

(*Id.* at ¶ 82.)

Recently, this Court learned that an IJ declined to release a petitioner on bond for whom it had ordered a bond hearing in a summary decision that merely stated, without any citation to specific facts:

> After considering the totality of the circumstances and all relevant factors, the Court denies bond.
>
> If DHS bears the burden, the Court finds that DHS has met its burden to establish that the respondent is both a danger and a flight risk.
>
> If the respondent bears the burden, the Court finds that the respondent has not met his burden to establish that he is neither a danger to the community nor a significant flight risk such that release from custody is warranted.

*Quiroz Vacarias v. Noem et al.,* Civil Action No. 1:26-cv-0574-WJM, ECF No. 14-1.

Based on the observations of fellow judges across the country, the Court is far from convinced this was an isolated incident.[4]  To the contrary, the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have

---

[4] *See, e.g., Zheng v. Rokosky, et al.,* --- F. Supp. 3d ---, 2026 WL 800203, at *6 (D.N.J. Mar. 23, 2026) (ordering immediate release after "IJ erroneously stated that she lacked jurisdiction in direct defiance of [the] Court's Order, failed to provide any explanation whatsoever for her supposed alternative holding that Petitioner is a flight risk, and by all appearances acted as a 'mere rubber-stamp' . . . for Respondents' predetermined decision to deny bond"); *Montero-Martinez v. Mattos, et al.,* 2026 WL 674497, at *1–2 (D. Nev. Mar. 9, 2026) (ordering release after petitioner's due process rights were violated when his bond was "revoked based on materially false information" regarding his criminal record); *Miri v. Bondi,* 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (ordering release after finding IJ abused its discretion in denying bond where they "did not explain the reasons for denying Miri's bond," "did not describe which *Martinez* factors were considered, if any, or what evidence was relied on," and "did not explain the reasons for denying Miri's bond and the record does not establish that the [IJ] relied on the appropriate factors"); *Rodriguez v. Greene,* 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026) (finding due process violation where "the IJ's decision . . . contain[ed] zero reference to any record or arguments put forth by either party," denied bond "exclusively on jurisdictional grounds," and held in the "alternative" that the petitioner was a danger to the community and a flight risk "without supplying any reasoning [as to] how the IJ came to such a conclusion").

preordained outcomes has become impossible to ignore.  As a result, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications."  *Zheng,* 2026 WL 800203, at *11 (collecting cases). Given this reality, the Court will order Singh's immediate release.

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.      The Court's Order to Show Cause (ECF No. 7) is MADE ABSOLUTE and Singh's Petition (ECF No. 1) is GRANTED;

2.      The Court GRANTS this relief to Singh pursuant to Claims 2 and 3 of his Petition.  The Court does not reach the merits of Claim 1;

3.      The Motion is DENIED AS MOOT (ECF No. 2);

4.      **By no later than this Friday, April 3, 2026,** Respondents shall IMMEDIATELY RELEASE Singh on his own recognizance, along with all his personal belongings, subject only to the conditions of his pre-existing conditional parole**.  No additional conditions of release shall be imposed on Singh by Respondents**;

5.      Respondents are ENJOINED from re-arresting or re-detaining Singh unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified.  At any such bond hearing, Respondents shall bear the burden of proof, and Singh shall be allowed to have counsel

present.  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order

6.      Respondents shall also continue to be ENJOINED from removing or transferring, or causing to remove or transfer, Singh from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.      Should Singh believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **April 29, 2026**.  Respondents shall file a response by no later than **May 20, 2026**, and Singh shall file a reply by no later than **June 3, 2026**; and

8.      Judgment shall enter in Singh's favor and against Respondents on **April 15, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 1st day of April, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge